Good morning and please be seated. Madam Clerk, will you please call the first case? 14-387-4 April vs. Codavis Green Okay, I'd like the attorneys for the parties to please step up to the podium. Please state your name, tell me who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning. My name is Jessica Ware. I'm with the Office of the State Appellate Defender. I represent Mr. Codavis Green and I acknowledge that he brought the team. You want to reserve some time for rebuttal? Yes, please. How much? Five minutes. Very good, Ms. Ware. Good morning, counsel. Good morning, Your Honor. Assistant State's Attorney Alan Spellberg representing the people of the state of Illinois. I'll be presenting argument in relation to the constitutionality of the statute. My co-counsel, Leslie Goings, on behalf of the people of the state of Illinois. Good morning. She'll be addressing any other issues that may arise. Okay, how much time will you need, Mr. Spellberg? Fifteen minutes in total. Very good. Okay, Ms. Ware, you may proceed with your argument. Thank you. How was Halloween? How was Halloween? Normal Halloween, didn't do anything special. Remember we set this case on Halloween? Right. I do remember that. May it please the Court, my name is Jessica Ware on behalf of the Office of the State Appellate Defender and I represent the appellant, Mr. Codavis Green. Your Honor, today I'd like to focus my argument on issue one from the briefs. Mr. Green was convicted of two counts of unlawful use of a weapon under a statute that has been declared unconstitutional in Moore v. Madigan. The state doesn't dispute that sections A4 and A10 of the UUW statute that Mr. Green was convicted of has been declared unconstitutional. The state's only dispute is that the enhancing factor in subsection C1.5, which makes the offense an enhanced sentencing range for the offense, that that subsection saves the statute, that it creates a new distinct offense. Well, the jury instructions specifically instruct the jury that the state has the burden to prove the enhancing element of 1,000 feet within a school beyond a reasonable doubt, right? Correct. But if you look at people v. Burns, Burns does not make that distinction between sentencing enhancements that have to be proven beyond a reasonable doubt under Apprendi and sentencing enhancements that don't. In fact, when Burns concluded that the sentencing enhancement in the Aggie UUW offense did not create a separate offense, Burns relied on cases that are like the Enson case, where the enhancing factor does have to be proven beyond a reasonable doubt. The state relied on people v. Green, people v. Robinson, people v. White. In all of those cases, the offenses have an enhancing factor like the Enson case. So, for instance, in people v. Green, the offense was robbery. It was enhanced because the victim was over 60 years old. And that's a factor that has to be proven beyond a reasonable doubt. And Burns relied on those lines of cases to conclude that a sentencing enhancement does not create a new and distinct offense. And even if you look at the sentencing enhancement at Issue and Burn, Section D of the Aggie UUW statute, that sentencing enhancement provision contains not only the fact of a prior conviction as an enhancement, but it also contains an enhancement for if you commit Aggie UUW wearing body armor, which would be an enhancing factor that would have to be proven beyond a reasonable doubt. And Burns said that that entire sentencing provision in Subsection D does not create new and distinct offenses, plural, that these factors in Subsection D do not create new offenses. And that is what Burns held. And the fix for that would be for the legislature to make these separate offenses, right? Because, you know, the body armor and the distance from a sensitive place make them separate offenses. They could do that. But the reason why it doesn't create a separate and distinct offense is because those enhancing factors are in a separate subsection. Burns and the cases that it follows says that if the enhancing factors are in a separate subsection, you know, state from the base elements of the offense, that those factors are merely sentencing enhancement, regardless of if they have to be proven beyond a reasonable doubt under Apprendi or not. So that distinction was not a distinction that the Burns court made. That's a distinction that the state raised in its brief, but that was not determinative of whether an enhancing factor creates a new offense. But in this case, there's a separate section regarding violations of specific places, which is separate and distinct from the sentencing portion B. Right, but it still contains enhancing factors. Those factors in that section do nothing but enhance the sentence. So what are the elements of an offense for a UUW violation? UUW violation, the elements of the offense are, well, Mr. Green was convicted of two separate counts. In one count, Section A-4, it requires that the person carries the firearm, basically a ready-to-use firearm, a firearm that is loaded and ready to use, in a vehicle on the person. Section A-10 requires that the person carry the ready-to-use firearm in a vehicle. And Mr. Green was convicted of both of those counts. And People v. Moore, which is what People v. Aguilar adopted, says that that statute is unconstitutional. And the state doesn't dispute that. And so this question looks at People v. Burns, and the same logic that the Burns court used in determining when an enhancing factor creates a new offense and when it doesn't, it's very clear in Burns that this statute, subsection C-1.5, does not create a separate offense. And if this court were to believe that subsection C-1.5 does create a separate offense, this court should find that unlawful use of a weapon within a thousand feet of a school is unconstitutional because it's too broad of a restriction on Second Amendment rights. So there are a lot of statutes that use a thousand feet, selling drugs within a thousand feet of a school, placing an adult's theater within a thousand feet of a school, which is a burden on First Amendment rights. Why should possession of a weapon, which poses clear danger to those in the vicinity of the person possessing the weapon, get different treatment? Right, because in Heller, we know that we have a core Second Amendment right to possess firearms in case of confrontation for self-defense. And in Moore v. Madigan, the court said that confrontation doesn't just occur in the home, it occurs in public. And so for Moore and Aguilar, we know that it's a core Second Amendment right to be able to carry firearms in public in case of self-defense. But isn't there the countervailing strong government interest in protecting vulnerable populations? So whether or not you consider this a core Second Amendment right, that is to bear arms in public, there's clearly a countervailing consideration here. Right, but if it's a core Second Amendment right, the state has the burden to show that this law is narrowly tailored, that it uses the least restrictive means to achieve that government purpose. So what would be the least restrictive means? Well, if you look at the UUW statute as it exists today, it has been amended from the former version. That is at issue in this case. It has been amended to fix the constitutional infirmity. The UUW statute now is much less broad. It allows for Second Amendment rights in a very limited circumstance for people who have licenses under the firearm, the Concealed and Carried Act. So the legislature has already determined that a less restrictive law is appropriate in this instance, which is why the statute was amended. And so we're just asking this court to find that the former version that was very, very broad that eliminated everyone's Second Amendment rights in these large, restricted areas did not allow for a licensing requirement for certain people who are law-abiding, mentally healthy, trained individuals to be able to exercise their Second Amendment rights in public. But even Moore v. Madigan says that it's perhaps constitutional to ban guns within a certain distance of a school, and many federal courts have so stated that it's constitutional under the Federal Act, which there's no difference between the federal 1,000 feet of a school and the state, is there? Well, yes, there's a big difference. What's the difference? The federal law is much more narrow. The federal law is like the current version of the UU statute that we have now. It allows for a limited right to carry firearms in public for those who have a license. So the UUW statute at issue in this case did not have that. It eliminated everyone's Second Amendment rights. The federal law also is more limited in the sense that it requires knowledge. You have to know that you are entering into one of these zones to be convicted of the offense, and the UUW statute at issue in this case had no knowledge requirements. So you could be driving down the street, and one of these 1,000 feet zones intersects with the highway that you're driving, and right there you've lost your Second Amendment right to carry arms in self-defense. Unknowingly, I mean, and for some people, these large restricted areas come to the very doorsteps of their houses. So those people lose their Second Amendment rights from the moment they leave their property. So what we're saying in this case is that this ban, this former version, is way too broad, and the proper fix is what the legislature has already done. And they narrowed the scope of it. Your client was 97 feet from school property. I know you say the legislature has fixed it by saying anybody with a FOID card can be as close to a school or a church or a hospital as they want. But why shouldn't the state be able to regulate even people with FOID cards being within a certain distance of a sensitive place? Well, two things. The current UUW statute, it requires licensing under the Concealed and Carried Act. So that's much more intensive. It's a screening process. They have to have a certain amount of training. They can't have certain prior convictions. It's a screening process that basically eliminates the right for only those who pose the most risk and preserves the Second Amendment right for law-abiding citizens. And in this case, I'm sorry, did you have a question? No, proceed. So in this case, the UUW statute did not allow for people, for law-abiding people to be able to have a license and be able to exercise their right in these areas. But shouldn't the court be concerned? Because sometimes with all these restrictions and all these checks, sometimes people that shouldn't have these weapons and who obtain these cards get through the process and they pose a real and present danger to the people in those restricted areas. Of course, I'm referring to what just recently happened in Texas. Now there's an excuse as to how he was able to obtain those weapons. What do we do? How do we protect ourselves? Well, it's a balancing act. There is a risk. And the state is right. The government does have a compelling interest in the safety of schoolchildren and the safety of Illinois residents. But it's a balancing act. You can't just completely eliminate the right in these large areas. I mean, a thousand feet is three football fields. So these restricted zones extend far beyond the sensitive place that Heller says we can regulate guns. They extend far beyond in every direction of every school, every park, every courthouse, every public transportation facility, every residential housing. The Las Vegas shooter fell over a thousand feet from the middle of the field. So a thousand feet is probably a pretty reasonable amount of space because he had a special kind of gun that he could even reach that far. But I think it was under a thousand feet when it came to the stage. I mean, yes, there are instances when people break the laws, no matter what the laws say, whether they're constitutional or unconstitutional. I'm just talking about the fact of a thousand feet, which has been used in many states and in federal law for a long time. It is a benchmark. Right, but the thousand feet in the federal law is a much more limited restriction. Well, on the specific you're saying then, yeah. Yes, it's much more limited. It's not nearly as broad. It's limited on two ends. It requires the culpable mental state, and it allows for a limited right to carry for those who are adults, trained, mentally healthy, law-abiding citizens. And, I mean, there's always going to be a risk. In Heller, the court said that we can't determine the Second Amendment based off of casualty counts. This is a fundamental right. Second Amendment right is a core fundamental right, and people have this right to be able to defend themselves in the face of confrontation. And so is the First Amendment. I mean, the First Amendment, I think, probably even more so than the Second Amendment. And yet courts have found that legislative acts that burden the First Amendment are appropriate, particularly given the interest of protecting children. Right, but you have to determine how much burdening, how much of a burden can this law be without becoming unconstitutional? So when you look at the standard, the strict scrutiny, you have to weigh two things, not just the government's compelling interest, but also the Second Amendment right. And in this case, there is a way to do it that is perfectly constitutional, and that's what the legislature has already done. Go ahead. But that's after the fact. What happened here is it's terrorizing to a principal or assistant principal or the staff when they see within, across the street from a school, someone standing with a gun in their poster. And in the car was a gun. That's not appropriate, it would seem to me, in any school. At that time, under this statute, why is somebody standing with a gun in front of a school? Would that be terrorizing to the students? And that's why the principal here is called the police. Right, this is not an as-applied challenge. This is a facial challenge. I'm challenging. So I understand. So which makes, again, your argument about, well, I mean, all over the state, most states all over the state, this wouldn't be a problem at all, a thousand feet from a school. It's simply in Chicago where it might be more of a problem because we have more schools and more population. But 80 percent of the state just really doesn't have any applicability. But, I mean, the Second Amendment right is an individual right. The people that live in rural populations, they carry that right when they're traveling to Chicago, when they're going to work, wherever the case may be. And in these rural areas, there are still schools, there are still parks, there are still courthouses, and nobody knows where this 1,000 feet perimeter ends. There are no markings on the grounds or signs up on the roads that say, hey, you're entering into 1,000-foot zone of a school or a park. Nobody knows these things. And so people will constantly have their Second Amendment right popping in and out of existence unknowingly, whether they live in a rural area or not. Are there a lot of laws people don't know where it begins or ends? I mean, do you know all the laws in the state of Illinois? No, nobody does. We don't have signs all over the place telling you what the law is. I know, but I'm just explaining how broad the law is. It's not that broad. 1,000 feet, people can, you know, 1,000 feet, people can estimate that. People can. Particularly, you would think somebody knows that that's the law, they're going to be careful. Well, if you believe that 1,000 feet is appropriate, that's fine. But another way to limit the law, instead of limiting the buffer zone, is to provide a limited right. And so you can see it in one of two ways, either limit the buffer zone or allow for a limited right. How about knowingly? How about being like the federal statute, say, knowing violations? I think even if it said knowingly, though, this statute would still be too broad just because of the large amount of area that it covers. And so who makes the determination? It really sounds like a legislative determination to me to decide what the buffer zone should be. I don't know that a court is necessarily equipped to say 1,000 feet is too much. Right, and I'm not asking this court to make that determination. This court doesn't have to determine, you know, what an appropriate buffer zone would be in order to find that this statute is unconstitutional. In fact, this court doesn't even need to come up with a fix for the statute. Because as I mentioned, the statute is defunct. It's no longer in operation. It's not in effect anymore. It has already been fixed. And a good example of a way to make this statute come into constitutional compliance is to look at the current version. To see what the legislature did. And that is how to make the statute constitutional by limiting the scope of the ban. How would the Alabama Supreme Court's decision, People v. Chavez, which was argued a couple months ago, affect this case? Well, it's the same issue as in this case. In that case, the defendant was convicted of 1,000 feet of a park. So presumably that decision will be binding on this court and decide this issue. So what relief are you asking for from this court? To vacate Mr. Green's two UUW convictions under Section A4 and A10. To find that those sections are unconstitutional. Okay, you reserve? Yes. You stand on your beat with respect to the other arguments? Yes. Very good. Thank you very much. Mr. Spalberg. Good morning again, Your Honors. Assistant State Attorney Alan Spalberg representing the people of the state of Illinois. I'd like to just begin with clarifying one point. As counsel stated, this is a facial challenge to the statute. It is not an as-applied challenge. Meaning the defendant, as the party moving to declare the statute unconstitutional, has to demonstrate that the statute is unconstitutional in all respects. That there are no factual circumstances in which it could be deemed constitutional. The problem, however, is that counsel effectively admitted that the statute is constitutional. She identified the compelling state interest that exists underlying the statute in that the state has a strong interest in keeping guns away from schools and other sensitive areas. She admitted that there's an appropriate area in which it should be kept out of schools. Whether, as she stated, whether it's 1,000 feet or less, maybe something. But that really begs the question as to whether or not it's a constitutional question or a policy question. The legislature in this case, much like the legislatures in other states and Congress as well, have determined that a 1,000-foot area is the appropriate buffer zone for this type of area. The federal statute, as Ms. Ware pointed out, contains a scienter requirement. It has to be knowing presence in that 1,000-foot buffer zone. Whereas, like counsel said, you're driving down a highway, you're within 1,000 feet, whether you know it or not, and you're in violation of the statute. Your Honor, I'm not sure that's entirely true. Because the statute does have a knowing mental state attached to it. If you look at the beginning of Section 24-1, it specifically says a person is in violation, if he knowingly, and then lists those factors. So there is a knowing mental state attached to it. I know of no cases at all where there is sort of a falling in and out of the safety zone, whether it's for a drug case or for a gun case like this. I know of no instance like that. Instead, what the case law, I believe, and I have no case law off the top of my head to admit to this, that there is at least an implicit understanding that you have to be aware of your location to fall under this. If there's any other case law, I certainly will look for it, and I will offer it to the court, and I hope that counsel will do the same. But the key of the federal statute, the 1,000-foot realm, is that it recognizes that the Second Amendment right is not unfettered. It can be restricted, and can be restricted to special places and areas around those special places. That's what the legislature has determined. That's what Congress has determined. And that's why the statute is constitutional, why it survives a facial challenge of constitutional error. I'll ask you the same question Justice Hyman asked Ms. Ware. What do you make of the arguments in Chirut's? I think we've all watched them, and the court, what I gathered from their questions, was somewhat skeptical about the State's ability to extend the protection in sensitive places to a buffer zone around sensitive places based on a historical analysis. Yes, Your Honor, I watched the same arguments. I heard the same questions. As a frequent advocate before this Court, the Ole Miss Supreme Court, I will say it is not always appropriate to read too much into the questions. Oftentimes there are questions that are being asked to press the bounds of the argument, and then those same matters come back the exact opposite way in the opinion. As noted in our brief, we specifically pointed out, and a footnote, the Chirut's case was pending before the Supreme Court. I would highly suggest that given the argument was held in September, we're probably going to be getting a decision in the next month or so, based upon my experience, in that this Court should probably wait for that decision to come down to get the guidance of the Supreme Court. But even if it doesn't... Or they could just carve out the 1,000 feet of a park. Both parties said it was several. They could, Your Honor, yes. And my recollection of the facts of Chirut's is that the offense actually occurred within the park, as opposed to on the 1,000 feet. I could be wrong about that. Whereas in this case, the offense truly did occur within the 1,000 feet area, not on the school grounds itself. So if that were the case, then a decision separating out the park from the 1,000 feet wouldn't necessarily be precedential to this area. But I want to take a step back to counsel's argument regarding the Burns decision. And I cannot stress enough how distinct Burns is from this case. Because in Burns, what the Court was addressing was the appellate court's conclusion that the sentencing factor turning an aggravated unlawful use of a weapon from a Class 4 to a Class 2, based upon the defendant's prior conviction, was not a separate offense. But the key there in Burns, which is so distinct from this case, is that the conduct between the Class 4 form and the Class 2 form was identical. It was the prohibition against the possession of a loaded, uncased, immediately accessible firearm in public. Whether you had a prior conviction or not, the conduct was prohibited by statute, was identical for the Class 4 and the Class 2 form. And so what the Supreme Court in Burns said, it isn't a separate offense. The question of the defendant's prior conviction only becomes relevant after he's found guilty. And so therefore, the legislature, when they prohibited this type of conduct, exceeded their authority under the Second Amendment. Well, but the IPI criminal instructions on ag-u-w by felon have the instruction in there just like it does for this offense. Your Honor, I actually think you've just combined two offenses unwittingly. You said ag-u-w by felon. We have two – in Illinois, we have two prior felon recidivist gun charges. There is unlawful use of a weapon by a felon, which makes the prior felony conviction an element of the offense. And then we also have the aggravated unlawful use of a weapon, which was the issue – the offense at issue in Burns, where it is not an element of the offense. But if you have a prior conviction, it is elevated from a Class 4 to a Class 2. And so that – so within an ag-u-w, the 24-1.6, the jury is never instructed about the defendant's prior conviction. In an unlawful use of a weapon, 24-1.1, the jury is instructed about the existence of the prior qualifying felony. And that's the key difference. And if you – to clarify this, if you look at Justice Garmon's special concurrence in Burns, her rationale for reaching the same conclusion as the majority is that because the ag-u-w statute doesn't require the jury to learn the offense – the prior conviction. That's why it violates that defendant's constitutional rights, his due process rights in that case. But in this case, the conduct is distinct. The conduct identified in subsections A4 and A10 of 24-1, the misdemeanor u-u-w, is very broad. You cannot possess a gun, a firearm, either in your car or on your person. It is then further clarified and specified and limited in Section C-1.5, where it identifies the specific locations where the conduct – the knowing conduct is prohibited. And that is exactly the same situation as we have in the ag-u-w cases and the Burns cases as well, where the only offense under 24-1.6 was the A3A, the loaded-on case immediately accessible. That was the only one that was struck. Everything else, the – the under 21 provision, the no FOID card provision, all the other provisions, all the other aggravating factors have been affirmed because the conduct which the legislature has chosen to prohibit is different. It is not the broad conduct which prohibits – which – which reaches the Second Amendment rights. Instead, it's a more limited one, part of the reasonable regulation that is approved under Heller. And that's what happened here. And that's why the Burns case isn't applicable here. What we have is we have a defendant who knowingly possesses a gun while across the street from the school. That falls under the statute. That's the proper conduct under the statute. And that's the proper conclusion that the trial court reached in this case when he refused to – the defendant's motion to dismiss this chart. Chart counts one and three. And so for that reason, we would ask this Court to affirm the constitutionality of the statute, to recognize that in this case it is appropriate, and to affirm the defendant's convictions. And as to the other arguments, if there's any questions, my co-counsel is available. Thank you. Thank you, Your Honor. Counsel, there are no questions. Mrs. Ware? Yes. The State mentioned that in this facial challenge that the defendant has the burden to show that there are no set of circumstances that the statute can be constitutionally enforced. But if you look at the Burns decision, the State made that same argument in Burns that, hey, the IUW statute can be constitutionally enforced to felons under Heller. And the Burns Court said you don't look at the impact on people that are not affected to judge the constitutionality of the statute. It says that the proper focus of the constitutional inquiry is on the group for whom the law is a restriction, not the group for whom the law is irrelevant. And I'm quoting from Burns. They quoted United States Supreme Court decision in Patel. And so this law affects everybody in Illinois, not just people who live in the city. Maybe it affects them more. But this law affects anyone in Illinois, whether they're traveling, whether they're stepping outside of their house. Whatever the case may be. And I know this Court mentioned, you know, the risk of people that use guns unlawfully and things of that nature. But I just want to remind this Court that Mr. Green was a 21-year-old with no prior conviction. He had a FOIA card. As soon as the teacher approached him, he went to his car, broke the gun down, put it in the case. He's a law-abiding person. So we have to also look at the interests of law-abiding people as well when we weigh the constitutionality of this statute. And what about Mr. Spellberg's point that in Burns, the Court was dealing with a statute where the jury would never be advised of the enhancing element, whereas here it's the way the statute is written, the jury has to find the enhancing element beyond a reasonable doubt. Right, but the State doesn't square that with the fact that the Burns Court relied, specifically relied, on several Supreme Court cases in which you do have to prove the enhancing factor beyond a reasonable doubt. Burns relied on those cases to conclude that the enhancing factor doesn't create a new distinct offense. And the State doesn't, the State can't square those two things together. And I just want to go back to the actual ADDUW statute that Burns was addressing. It's a little bit different now, but subsection D that lists the enhancing factors, it has an enhancing factor in there that has to be proven beyond a reasonable doubt under Apprendi. The person is in possession or wearing body armor. That is a fact that has to be proven beyond a reasonable doubt under Apprendi. And the Burns Court said that this subsection, subsection D, with the enhancing factors, do not create separate offenses. That's what Burns said. And Burns is good law. It's binding and it gives us instruction on how to determine when an enhancing factor creates a separate offense. And under Burns, this enhancing factor does not. The State also mentioned Heller allows for restrictions like the instant case within a thousand feet of the school. But I just want to remind the Court that there is nothing in Heller that says that a restriction that goes three football fields beyond a sensitive location would not be protected by the Second Amendment. Heller speaks of prohibitions of arms in sensitive places. It does not suggest that this law that goes far beyond that would not be covered by the Second Amendment. What do you mean when you say in? In schools, in schools, in parks, in towns. But it also says looking at English law and the Nottingham statute and how that was interpreted by Lord Coke and so forth, and go all through the history, it's not that way. If we're going to use originalism, then the idea, according to the interpretations of the Nottingham law, was that it was not only in fairs, it was about those places as well, going to and from. It was a very broad law. And it even says so. It says at the end there, places elsewhere or everywhere, three or four words at the end of the important sentence there. So I don't see where you can just limit it to in as opposed to about. Right. You mean just staying outside of a school door with a gun? No, no. I'm just saying that Heller doesn't stand for the assertion that a thousand feet. No. That's what I'm saying. I'm not just in. It does suggest that you can have zones that would be protected. Correct. And maybe a zone that's less than a thousand feet would be constitutional. Well, how do we determine that? Right. But the states all over the country for years have said a thousand feet is appropriate. Right. So this court doesn't have to determine that because the legislature has already fixed the statute. The statute. But they didn't fix a thousand feet. No. But they allow for a limited right to carry in those thousand feet. So a person that has a license under the Concealed and Carry Act can lawfully carry a gun in that zone. So it fixed the statute to limit the broad scope of that 1,000 feet and just eliminate the right for the segment of the population that poses the most risk. And so that's another way to narrow it down as opposed to just narrowing the 1,000 feet to, like, 800 feet or whatever. Narrow the band of the actual law. So if this court has no further questions, I'd ask this court to vacate Mr. Green's convictions and find that the UW statute at issue in this case that was in effect in 2012 is unconstitutional. Thank you. Thank you, Mrs. Ware. Mrs. Ware, Mr. Spellberg, I want to compliment you on your beliefs and especially on your arguments. This matter is going to be taken under advisement. Thank you very much.